IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **10-cv-644-JLK**

**SHANNON FREEMAN, as personal representative of BRYANT HANNA, a child, and
STEPHANIE HANNA, as representative of the estate of ROBERT HANNA, deceased**,

      Plaintiffs,

v.

**GREGORY COSTA, PA-C;
DIANE VOYTKO, M.D.;
COLORADO MOUNTAIN MEDICAL, P.C, and
JOHN DOE and JANE DOE, whose identities are currently unknown,**

      Defendants.

---

### ORDER

---

Kane, J.

      This wrongful death medical malpractice action was brought on behalf of Robert Hanna,

a father who died from influenza after being seen by a physician assistant at a Vail clinic run by

Colorado Mountain Medical, P.C.  Mr. Hanna's representatives name as Defendants the clinic

("CMM"), the treating physician assistant (PA) Gregory Costa, the PA's supervisor of record,

Dr. Diane Voytko, and two unnamed John and Jane Doe Defendants described as potential

principals, employees or agents of CMM at relevant times.  Plaintiffs claim Costa was

professionally negligent in his treatment of Mr. Hanna, and seek to hold the clinic, Dr. Voytko

and/or the unnamed Defendants liable based on violations of their duties of care as Costa's

supervisors.

      Dr. Voytko moves for Motion for Summary Judgment.  She argues on facts undisputed in

the record that while she was registered as Costa's supervising physician under Colorado

Medical Board Rules and Regulations for Licensure of and Practice by Physician Assistants (the

"Rules") at the time he saw Hanna on March 24, 2008, she had actually handed off those duties to a different doctor several months before and was not supervising Costa at that time as a matter of fact.  Plaintiffs do not challenge these facts.  Instead, they argue Rule 400 registration binds a registered PA supervisor whatever the circumstances unless and until a change in supervisory status is communicated in writing.  Because Voytko's Rule 400 designation did not change between February 2007 when she registered as Costa's supervisor and October 2008 when Dr. Steven McGarry replaced her, Plaintiffs contend Voytko remained Costa's supervisor throughout and cannot disclaim responsibility for his actions on March 24, 2008.

Plaintiffs' and Dr. Voytko's filings, together with the deposition testimony and other evidence submitted on summary judgment, demonstrate there is no genuine factual dispute that Voytko terminated her supervision of Costa in January 2008.  The question is whether Voytko's Rule 400 registration overrides those facts as a matter of law.  It does not.

*Legal Standard.*

Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), *applied in Adamson v. Multi. Cmty. Diversified Servs., Inc.,* 514 F.3d 1136, 1145 (10th Cir. 2008).  A fact is material if it could affect the outcome of the suit under governing law; a dispute of fact is genuine if a rational jury could find for the nonmoving party on the evidence presented. *Id.*  On a motion for summary judgment, the moving party bears the burden of demonstrating there are no genuine issues of material fact that should be decided at trial. *Id.* at 1145.  In deciding whether the moving party has carried its burden, I do not weigh the evidence and instead must view it and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.*

*Discussion*

<u>No Per Se Liability based on Colorado's Rule 400 Regulatory Scheme</u>.

Plaintiffs assert Dr. Voytko is liable for Mr. Costa's acts or omissions "not because she provided medical care or treatment for Hanna, or because she consulted with Costa about his case . . . ," but rather "because of her admitted and documented status as Costa's designated primary supervising physician of defendant Costa on record with the Board from January 24, 2007 until October 24, 2008."  Pls.' Resp. Mot. Summ. J. at 2.  Plaintiffs cross-move for a declaration that Dr. Voytko was Costa's "lawful designated primary supervising physician as a matter of law" on March 24, 2008, and is precluded from asserting that "anyone other than Voytko" supervised him on that date.  Pls.' Mot. Partial Summ. J. (Doc. 56) at 9.  Plaintiffs misread and misapprehend the Medical Board Rules and their operative effect in common law medical malpractice actions.

Generally speaking, administrative rules – unlike legislative enactments – neither create private causes of action for their violation nor relieve litigants of their evidentiary burdens in private litigation.  *See Chambers v. St. Mary's School*, 697 N.E.2d 198, 203 (Ohio 1998).  The fact Voytko was Costa's "designated primary physician supervisor" under Rule 400 is therefore neither dispositive of the question of Costa's agency relationship to Voytko on March 24, 2008, nor does it relieve Plaintiffs of their burden in private litigation to establish that relationship and any related legal duties of care.  The suggestion Rule 400 impresses a "scarlet letter" on Dr. Voytko that is not removable is rejected.

Moreover, Rule 400 does not even purport to create a private right of action for third parties injured by PAs or their supervisors.  The only reference to physician supervisor

"liability" in the Rule 400 PA licensure scheme is found in Section 2(C)(2):  "[I]f a supervised physician assistant commits unprofessional conduct as defined [by Colorado statute]," then "the primary physician supervisor shall be deemed to have *violated these Rules*."  3 CCR 713-7 (emphasis mine).  The remedy for Rules violations lies with the Medical Board in accordance with its duties to license and monitor PA medical practice.  *See* C.R.S. § 12-36-118.  It is beyond the competence of the Medical Board to enact laws applicable beyond the scope of its statutory authority.  Only the legislature or the Colorado Supreme Court has the authority change the common law.

That the Colorado Medical Board's PA regulatory scheme authorizes no private cause of action for violations of its Rules Voytko cannot be held liable to Mr. Hanna's representatives in a proper action at law.  It only means Voytko's registration status and/or violation of Rule 400 registration requirements do not operate as negligence per se.

Viewed this way, Dr. Voytko's Rule 400 designation becomes a fact relevant to questions of agency, actual supervisory status, and negligence under Colorado professional malpractice law.  *See generally*, C.J.I.-Civ. 15:1 (Physicians and Practitioners of Other Healing Arts - Malpractice - Elements of Liability).  The question on summary judgment, then, is whether Dr. Voytko's Rule 400 designation raises a dispute as to whether Voytko terminated her agency and supervisory relationship with Costa in January 2008.

<u>Dr. Voytko's Motion for Summary Judgment</u>.

Dr. Voytko moves for entry of summary judgment on grounds the undisputed facts support no plausible inference that she was Costa's principal, employer, or supervisor on March 24, 2008.  In support Voytko offers her own sworn testimony that Dr. Edward Dent assumed

4

primary supervision duties over Costa in January 2008; Dr. Dent's sworn testimony corroborating that fact; CMM Executive Committee minutes reflecting "unanimous approval" of the change in January 2008, *see* Mot. (Doc. 50) at 7, 8-13 (and related attachments); and the unrefuted testimony of both Voytko and Dent that the failure to register Dr. Dent as Costa's new primary supervisor was a "paperwork glitch." Against this evidence we have Voytko's Rule 400 designation, identifying Voytko as Costa's supervisor from February 2007 to October 2008.

The adoption of C.R.S. § 13-21-111.5 eliminating joint and several liability for joint tortfeasors had "the effect of eliminating liability of a physician for the negligent acts of another physician absent a showing that the physicians 'acted in concert' . . . [or] were in an employment, partnership or joint venture relationship with one another." Notes on Use, C.J.I.-Civ. 15:1 (quoting *Freyer v. Albin*, 5 P.3d 329, 331 (Colo. App. 1999), *cert. denied* (2000)). The "crucial question" is not the context of the negligence at issue, "but the master-servant relationship of the parties." *Hall v. Frankel*, 190 P.3d 852, 860 (Colo. App. 2008), *cert. denied* (2009). This question is one of fact, not law. *Id.* (citing *Young v. Carpenter*, 694 P.2d 861, 863 (Colo. App. 1984).

Where, as here, a plaintiff sues a non-acting or supervisory physician claiming that his relationship with the "actively" negligent medical professional renders him vicariously liable for that negligence, Colorado law requires plaintiff to establish that relationship by a preponderance of the evidence. C.J.I.-Civ. 15:1 (directing counsel to "the appropriate instructions from Chapters 7 (agency) or 8 (respondeat superior)). Because Plaintiffs' vicarious liability claims against Voytko are premised on her agency relationship with Costa at the time he treated Hanna, plaintiffs must prove that agency relationship existed on March 24, 2008.

An agency is created by an agreement by which the persons involved agree that one of them is to act for, or in the place of, the other.  C.J.I. Civ. 7:3 (citing *Hall* in doctor and covering doctor context).  The most important fact in determining whether an agency relationship exists is the principal's right to control the agent.  *See id.*  For our purposes, the terms of Voytko's Rule 400 designation established an agency relationship between her and Costa effective February 9, 2007.  The Rule 400 Form does not, without more, rebut Voytko's multiply-corroborated evidence that she terminated that relationship in January 2008.

An agent's authority to act for the principle terminates either as agreed by the agent and principle together, or upon "the occurrence of circumstances on the basis of which the agent should reasonably conclude that the principal no longer would assent to the agent's taking action on the principal's behalf."  Rest. (3d) Agency § 3.09 (2006).  According to Dr. Voytko, Dr. Dent, and Colorado Mountain Medical Executive Committee Minutes, Voytko terminated her supervisory relationship with Costa in January 2008 after which Costa was no longer authorized to act for, or in the place of, Voytko.  Both Voytko and Dent testified that their intent was that the change would be reflected in the appropriate Rule 400 filing and that the Medical Board's failure to reflect any such change had to have been a "paperwork glitch."  Costa, the ostensible agent, testified that at the time he treated Mr. Hanna, he "believed" Dent was his supervisor and had "take[n] over" for Dr. Voytko.  Costa Dep. (Doc 59-2) pp. 133-34.  Other than Voytko's February 2007 to October 2008 Rule 400 designation, Plaintiffs offer no facts to rebut Voytko's evidence that she terminated her supervisory status in January 2008 and that Costa was not authorized to treat patients on her behalf thereafter.  On this record, there is no factual dispute that precludes entry of summary judgment in Dr. Voytko's favor or that warrants requiring Dr.

6

Voytko, or Plaintiffs, to proceed to trial on Plaintiffs' claims for vicarious (agency) liability or negligent supervision.

Plaintiffs' Negligent Supervision claim.

Because there is no genuine factual dispute regarding Voytko's status as Costa's supervisor on March 24, 2008, there is no factual basis on which to find that Dr. Voytko owed, or breached, any duty of care to Mr. Hanna as Costa's supervisor.  Independently of this holding, however, I agree with Dr. Voytko that even if she had been Costa's supervisor when he treated Mr. Hanna, any negligence on her part in that supervision would have to be established by the expert testimony of another physician under C.R.S. 13-64-401.  This provides an additional and independent basis for granting summary judgment to Voytko on the negligent supervision claim.

Based on the foregoing, Dr. Voytko's Motion for Summary Judgment (Doc. 50) is GRANTED.  Plaintiffs' Cross-Motion for Summary Judgment (Doc. 56) is DENIED.  The suggestion that Plaintiffs' Cross-Motion should not be considered as untimely is DENIED as MOOT.  This matter shall be set for a forthwith pretrial conference and trial setting.  Available dates for the pretrial conference include April 19 or 26, 2012, at 10:00 a.m.  Other dates and times may be available as well.  Counsel shall confer and call in to chambers for a pretrial converence date on or before noon on March 7, 2012.

Dated:  March 2, 2012

**s/John L. Kane**
SENIOR U.S. DISTRICT JUDGE
